PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                      No. 00-4323

MICHAEL LEON BRANDON,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-99-318)

Argued: January 26, 2001

Decided: April 17, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Traxler wrote the
opinion, in which Judge Williams and Judge Lee joined.

## COUNSEL

**ARGUED:** Eric David Placke, Assistant Federal Public Defender,
Greensboro, North Carolina, for Appellant. Lisa Blue Boggs, Assis-
tant United States Attorney, Greensboro, North Carolina, for Appel-
lee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender,
Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr.,
United States Attorney, Greensboro, North Carolina, for Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Durham police officers investigating complaints of drug activity saw Michael Leon Brandon and another individual smoking crack cocaine. Brandon, carrying a black bag and a crack pipe, walked away from the scene despite the officers' requests to the contrary. Brandon then ran, shedding many of his clothes and the black bag along the way. After several blocks, the officers apprehended Brandon and then located the black bag, which contained a stolen .45 caliber semi-automatic pistol. Brandon, a convicted felon, pleaded guilty to unlawful possession of a firearm. *See* 18 U.S.C.A. § 922(g)(1) (West 2000). The district court determined that Brandon was an armed career criminal under 18 U.S.C.A. § 924(e)(1) (West 2000) and sentenced him to 180 months, the minimum sentence under that section. Brandon appeals, challenging the enhanced sentence. We vacate Brandon's sentence and remand for resentencing.

I.

Federal law prohibits the possession of a firearm by certain people, including those "who ha[ve] been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C.A. § 922(g)(1) (West 2000). While the sentence for a section 922(g) violation ordinarily is not more than ten years, *see* 18 U.S.C.A. § 924(a)(2) (West 2000), section 924(e) imposes a mandatory minimum sentence of fifteen years for a violation of section 922(g) if the defendant has three previous convictions "for a violent felony or a serious drug offense," 18 U.S.C.A. § 924(e)(1). As is relevant to this case, the statute defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii).

Brandon has three prior drug-related convictions. He concedes that two of the convictions satisfy section 924's definition of a serious drug offense, but he contends that the third conviction does not. The challenged conviction (the "1994 conviction") is Brandon's 1994

guilty plea in North Carolina to a charge of possessing between twenty-eight and two hundred grams of cocaine in violation of N.C. Gen. Stat. § 90-95(h)(3). Under this statute, "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony . . . known as 'trafficking in cocaine.'" The statute establishes three levels of progressively severe sentences for cases involving at least twenty-eight but less than two hundred grams; at least two hundred but less than four hundred grams; and more than four hundred grams. Brandon argues that because he was charged with and pleaded guilty only to possession of cocaine, the 1994 conviction is not a serious drug offense as defined in section 924(e). If Brandon's position is correct, then he would not be subject to the mandatory fifteen year minimum sentence required by section 924(e). Whether the 1994 conviction qualifies as a predicate conviction under section 924(e) is a question of statutory interpretation reviewed *de novo*. *See United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995).

## II.

When determining whether a prior conviction can support enhanced sentencing under section 924(e), courts use a "categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). In a "narrow range of cases," however, the sentencing court may go beyond the fact of conviction and the statutory definition of the underlying crime to determine whether the conviction may be used as a predicate conviction under section 924(e). *Id.* at 602.

This narrow exception applies in cases where the state statute can be violated in several ways, some of which would support enhancement under 924(e) and some of which would not. In those cases, the sentencing court may examine the indictment, other charging papers, or jury instructions to determine whether the defendant was charged with a crime that meets the requirements of section 924(e). *See id.*; *see also United States v. Coleman*, 158 F.3d 199, 202 (4th Cir. 1998) (en banc); *United States v. Cook*, 26 F.3d 507, 509 (4th Cir. 1994).[1]

---

[1]Although *Taylor* involved the determination of whether a prior conviction should be considered a burglary conviction under section

In this case, Brandon's 1994 conviction springs from a violation of a statute that prohibits the sale, manufacture, delivery, transportation, or possession of twenty-eight grams or more of cocaine. Because the statute can be violated by conduct that clearly falls within section 924(e)(A)(2)(ii)'s definition of serious drug felony (sale or manufacture), as well as by conduct that perhaps does not fall within the definition (possession), then resort to the indictment is proper. *See United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990) (looking to conduct alleged in the charging information in a case where the prior conviction involved the violation of a state statute that prohibited the manufacture, distribution, and possession of controlled substances).

The indictment underlying the 1994 conviction alleges only that Brandon possessed more than twenty-eight grams but less than two hundred grams of cocaine. As previously noted, section 924(e)(2)(A)(ii) defines a serious drug offense as an offense under state law that involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Thus, it would appear that Brandon's 1994 conviction, which seems to involve only possession, not possession with intent to distribute, does not satisfy the requirements for sentence enhancement under section 924(e).

The government, however, contends that while section 924(e)(2)(A)(ii) requires a predicate conviction to "involve[ ] possess-

_____

924(e)(2)(B)(ii), we have applied its categorical approach and its approval of limited review of the charging papers and jury instructions to cases involving other crimes under subsections (2)(B)(i) and (2)(B)(ii). *See United States v. Frazier-El*, 204 F.3d 553, 562 (4th Cir.), *cert. denied*, 121 S. Ct. 487 (2000); *United States v. Hairston*, 71 F.3d 115, 117-18 (4th Cir. 1995); *Cook*, 26 F.3d at 510. This approach is equally applicable to the determination of whether a prior conviction is for a "serious drug felony" under section 924(e)(2)(A). *See Taylor*, 495 U.S. at 602 ("We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."); *United States v. Bregnard*, 951 F.2d 457, 459 (1st Cir. 1991) ("Although *Taylor* involved the analysis of a crime specifically listed in § 924(e)(2)(B)(ii), the Supreme Court adopted a formal categorical approach applicable to the entire enhancement statute.").

[ion] with intent to manufacture or distribute," that does not mean the required intent must be an *element* of the underlying crime. According to the government, because "serious drug offense" is not defined by reference to the elements of the crime, Congress did not require intent to manufacture or distribute to be an element of the underlying crime. The government argues that all North Carolina convictions for trafficking by possession "involve" intent to distribute given the quantity (at least twenty-eight grams of cocaine) required to trigger application of the statute.

As the government points out, Congress defined "violent felony" in section 924(e) as a crime that "*has as an element* the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C.A. § 924(e)(2)(B)(i) (emphasis added), and also as a crime that "*otherwise involves* conduct that presents a serious potential risk physical injury to another," 18 U.S.C.A. § 924(e)(2)(B)(ii) (emphasis added). When applying this subsection, courts routinely give different meaning to the phrases "has as an element" and "otherwise involves," treating as violent felonies convictions under statutes proscribing conduct that presents a substantial risk of injury, even though force or physical injury is not an element of the underlying crime. *See, e.g.*, *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001); *United States v. Houston*, 187 F.3d 593, 594-95 (6th Cir. 1999); *United States v. Hairston*, 71 F.3d 115, 117-18 (4th Cir. 1995). This interpretation reflects the fundamental principle of statutory construction that "courts are obligated" to give effect to Congress's decision to use "different language in proximate subsections of the same statute." *United States v. Barial*, 31 F.3d 216, 218 (4th Cir. 1994).

Section 924(e)'s definition of serious drug offense speaks not in terms of the elements of the underlying crimes, but in terms of crimes "*involving* manufacturing, distributing, or possessing with intent to manufacture or distribute" illegal drugs. 18 U.S.C.A. § 924(e)(2)(A)(ii) (emphasis added). We see nothing in the structure or wording of subsection (2)(A)(ii) that would permit us to interpret "involving" in a manner inconsistent with the interpretation of "otherwise involves" in subsection (2)(B)(ii). That is, we cannot read "otherwise involves" as having a meaning distinct from "has as an element," while at the same time reading "involving" as meaning "has as an element." *See Commissioner v. Lundy*, 516 U.S. 235, 250 (1996) (noting

the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning" (internal quotation marks omitted)).

Moreover, the word "involving" itself suggests that the subsection should be read expansively, *see, e.g.*, *American Heritage College Dictionary* 717 (3d ed. 1997) (defining "involve" as "[t]o have as a necessary feature or *consequence*" (emphasis added)), as evidenced by this court's decision in *United States v. James*, 834 F.2d 92 (4th Cir. 1987). In *James*, the question was whether a conviction for possession of cocaine with intent to distribute was a drug trafficking conviction under 18 U.S.C.A. § 924(c). Although it has since been amended, section 924(c) at that time defined "drug trafficking crime" as "'any felony violation of federal law involving the distribution, manufacture, or importation of any controlled substance.'" *James*, 834 F.2d at 92. The *James* court rejected the argument that possession with intent to distribute was not a drug trafficking crime under section 924(c):

> [V]iolations "involving" the distribution, manufacture, or importation of controlled substances must be read as including more than merely the crimes of distribution, manufacturing, and importation themselves. Possession with intent to distribute is closely and necessarily involved with distribution. In fact, the line between the two may depend on mere fortuities, such as whether police intervene before or after narcotics have actually changed hands.

*Id.* at 93.

Accordingly, we agree with the government that a prior conviction constitutes a serious drug felony if the underlying crime *involves* possession with intent to manufacture or distribute, even if that intent is not a formal element of the crime under state law.[2] It does not follow

---

[2]We recognize that there are decisions from other circuits that might appear to reach a different conclusion. But those cases in fact do not address the precise issue we confront here. For example, in *United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990), the court concluded that a conviction for trafficking based on possession of heroin was not a con-

from this conclusion, however, that Brandon's 1994 conviction is a serious drug offense for purposes of section 924(e).

In cases where enhancement under section 924(e) is hinged not on the elements of the underlying crime but on whether the crime "involves" particular conduct, courts follow the approach outlined in *Taylor* and ask whether the proscribed conduct is an inherent part or result of the generic crime of conviction, without regard to the facts surrounding the underlying conviction, or, stated somewhat differently, whether the abstract crime intrinsically involves the proscribed conduct. *See Stephens*, 237 F.3d at 1033 (holding that a conviction for carrying a weapon in connection with a drug trafficking offense is a

---

viction for a serious drug offense under section 924(e)(2)(A)(ii). There is no indication in *Whitfield*, however, whether the decision was premised on a conclusion that intent to distribute or manufacture must be an element of the underlying crime of conviction or upon a determination that the crime for which the defendant was convicted simply did not "involve" the requisite intent. Similarly, the Fifth Circuit in *United States v. Martinez-Cortez*, 988 F.2d 1408, 1410 (5th Cir. 1993), stated that "without 'intent to distribute,' a conviction for possession of a controlled substance does not qualify as a 'serious drug offense' for purposes of enhancement [under section 924(e)]." The court reviewed the record and concluded that one of the defendant's "convictions was for 'possession of a controlled substance' (no mention of intent to distribute)," and therefore could not be used to enhance the defendant's sentence. *Id.* The opinion does not indicate whether it was the absence of intent to distribute as an element that was dispositive or whether the record simply did not support an inference of the requisite intent. Other circuits considering the meaning of "felony drug offense" as used in 21 U.S.C.A. § 841 have noted that a conviction for "simple possession" is not a serious drug offense under section 924(e)(2)(A)(ii). *See United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998); *United States v. Sandle*, 123 F.3d 809, 811-12 (5th Cir. 1997); *United States v. Hansley*, 54 F.3d 709, 717-18 (11th Cir. 1995). Again there is no indication in these cases whether the terms "simple possession" or "mere possession" were used to refer only to convictions for crimes that do not include intent to manufacture or distribute as an element, or whether they referred to convictions for crimes that did not "involve" the requisite intent to distribute or manufacture, perhaps because of the quantity of drugs encompassed by the relevant statute.

violent felony under section 924(e)(2)(B)(ii) because "the danger of violence inheres in the combination of firearms and drugs" (internal quotation marks and alteration omitted)); *Hairston*, 71 F.3d at 118 (concluding that felony escape from custody is a violent felony under section 924(e)(2)(B)(ii) because the crime "inherently presents the serious potential risk of physical injury to another"); *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) (en banc) (finding kidnaping conviction to be a violent felony under section 924(e)(2)(B)(ii) even though force is not a necessary element of the crime under state law because "kidnaping is the 'type' of offense where the risk of physical injury is invariably present"); *United States v. Anderson*, 989 F.2d 310, 312 (9th Cir. 1993) (noting that section 924(e)(2)(B)((ii) "covers crimes that inherently—as defined in the abstract, not necessarily as committed in the particular case—'involve[ ] use of explosives, or otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another'" (alterations in original)); *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993) ("In applying such a categorical approach, we think that courts must necessarily make common-sense judgments about whether a given offense proscribes generic conduct with the potential for serious physical injury to another."), *aff'd*, 511 U.S. 485 (1994). Applying the same approach in this case, we must determine whether intent to manufacture or distribute is inherent in the generic conduct proscribed by the statute and alleged in the indictment underlying Brandon's 1994 conviction—possession of more than twenty-eight grams but less than two hundred grams of cocaine.

Distribution of drugs is a greater threat to society than is mere use of the drugs, though both constitute great dangers, and it is natural and reasonable to assume that those who possess very large quantities of drugs intend to distribute those drugs. And this very reasonable assumption is likely the reason that many states have enacted trafficking statutes that severely punish possession of large quantities of drugs without making intent to distribute those drugs an element of the crime. What quantity of drugs must be possessed before this presumption of an intent to distribute is appropriate, however, is difficult to answer definitively, as evidenced by the widely varying quantities that states have established as the threshold for a trafficking-by-possession conviction. For example, possession of five grams of cocaine is considered trafficking in Delaware, *see* Del. Code Ann. tit.

16, § 4753A(a)(2); possession of ten grams of cocaine is trafficking in South Carolina, *see* S.C. Code Ann. § 44-53-370(e)(2); possession of twenty-eight grams is trafficking in North Carolina, *see* N.C. Gen. Stat. § 90-95(h)(3); but it takes possession of more than one hundred and fifty grams to be guilty of trafficking in Missouri, *see* Mo. Ann. Stat. § 195.223.2.

Most people might agree that intent to distribute is inherent in the possession of two hundred grams of cocaine, but Brandon was alleged to have been in possession of between twenty-eight grams (which is just under an ounce) and two hundred grams of cocaine. Quantities at the lower end of this range are not so large that the only reasonable inference is that one who possesses that amount must intend to distribute it. While that may be a reasonable inference, another reasonable inference is that an ounce of cocaine, or even more, is intended for personal use only. *Cf. United States v. Baker*, 985 F.2d 1248, 1260 (4th Cir. 1993) (concluding that the defendant was entitled to an instruction on simple possession as a lesser-included offense of possession with intent to distribute, noting trial testimony establishing that the defendant, a cocaine user, "bought one to three ounces of cocaine a week, which is a large amount but which could be consistent with personal consumption"); *United States v. Latham*, 874 F.2d 852, 863 (1st Cir. 1989) (finding evidence that two people jointly possessed one ounce of cocaine insufficient to establish possession with intent to distribute and noting trial testimony that "a heavy user could go through an ounce of cocaine in 1 1/2 — 2 days"). Certainly society's comfort level in equating possession to possession-with-intent increases as the quantity of drugs possessed increases, and it decreases as the quantity of drugs possessed decreases. Nevertheless it is clear that some defendants possess very small quantities of drugs for the sole purpose of distributing them and that some defendants possess significant quantities of drugs solely for personal use. Therefore, while the quantity of drugs possessed can serve as an indicator of the purposes for which the drugs were possessed, at certain levels it is a rough and imprecise indicator at best.

If Brandon had been convicted under a statute with a sufficiently high minimum quantity—for example, a statute like Missouri's that considers possession of more than one hundred and fifty grams of cocaine to be trafficking—then we would have no difficulty conclud-

ing that the conviction "involved" an intent to manufacture or distribute. That is, under such a statute we could easily conclude from the statutory definition (possession of more than one hundred and fifty grams of cocaine) that intent to manufacture or distribute is inherent in the crime of conviction. Given the range of drug quantities covered by the North Carolina statute, however, we simply cannot say that the typical conduct reached by that statute inherently involves an intent to manufacture or distribute that cocaine, which would be necessary for the 1994 conviction to serve as a predicate conviction under section 924(e)(A)(2)(ii). *Cf. United States v. Martin*, 215 F.3d 470, 475 (4th Cir. 2000) (holding that bank larceny is not a crime of violence for purposes of sentencing as a career offender under the sentencing guidelines, because "[o]ur precedents suggest that most, if not all, instances of an offense should involve a serious potential risk of injury in order for that offense to constitute a crime of violence in the abstract").[3] Nor can we reach such a conclusion by looking more specifically to the actual quantity of drugs possessed by Brandon.

Preliminarily, we question whether such a factual inquiry is consistent with the categorical approach used when determining whether a prior conviction is a predicate conviction under section 924(e). *See Taylor*, 495 U.S. at 600 (concluding that section "924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions").

The indictment for the 1994 conviction states only that Brandon possessed between twenty-eight and two hundred grams; it does not mention the specific quantity involved. The amount, however, is mentioned in the presentence report, and Brandon does not challenge that amount as inaccurate. Whether it is proper under *Taylor* to look to facts contained in a presentence report when the fact of conviction is

---

[3]The same categorical approach is applied when determining whether an underlying conviction is a "crime of violence" for purposes of career offender status under section 4B1.1 of the Sentencing Guidelines Manual. Courts often rely on guidelines cases when considering armed career criminal status under section 924(e) and vice versa. *See Martin*, 215 F.3d at 474 n.2.; *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998); *see also United States v. Shepard*, 231 F.3d 56, 63 n.7 (1st Cir. 2000).

insufficient to resolve the armed career criminal question is open to some debate. *Compare, e.g.*, *United States v. Adams*, 91 F.3d 114, 116 (11th Cir. 1996) (concluding that resort to the presentence report is proper), *with United States v. Potter*, 895 F.2d 1231, 1238 (9th Cir. 1990) (concluding that resort to the presentence report is improper). This circuit has not in a published opinion sanctioned the consideration of a presentence report and thus far has only considered charging papers or certified court records. *See Frazier-El*, 204 F.3d at 562-63 (considering statutory definition and state certified court records); *Coleman*, 158 F.3d at 202-03 (considering charging papers, which under Maryland law, included probable cause affidavit); *Cook*, 26 F.3d at 509 (considering indictment); *United States v. Bowden*, 975 F.2d 1080, 1082 n. 2 (4th Cir. 1992) (considering certified copies of the state court judgments and declining to address whether consideration of the presentence report would also be proper). Assuming without deciding that resort to the presentence report is proper in general, it is not certain that the inquiry would be appropriate in this case.

As will be explained in more detail later, the Supreme Court in *Taylor* determined that "burglary" as used in section 924(e) referred to a generic burglary, with certain elements specified by the Court, and not simply to any crime that happened to be called burglary under state law. *See Taylor*, 495 U.S. at 592. Because some states may define burglary more broadly, the Court explained that the categorical approach nonetheless permits the sentencing court to look to "the charging paper and jury instructions" to determine whether the jury was "actually required . . . to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602.

*Taylor* thus allows consideration of information other than the fact of conviction only for the purpose of determining what facts the jury was required to find to convict the defendant. In effect, then, this inquiry simply determines the elements of the particular permutation of a crime with which the defendant was charged when the statute defines a crime that can be committed in several ways; it does not allow consideration of the defendant's particular conduct if that conduct does not help determine the elements of the crime with which the defendant was actually charged. *See United States v. Watkins*, 54 F.3d 163, 166 (3rd Cir. 1995) (explaining that if the "'statutory definition of the prior offense' is broad enough to permit conviction based on

conduct that falls outside of the scope of § 924(e)(2)(B), it becomes necessary to look beyond the statute of conviction" for the purpose of determining "whether the trier of fact *necessarily found elements* that would qualify the offense as a 'violent felony' under § 924(e)(2)(B)" (emphasis added)); *cf. Kirksey*, 138 F.3d at 124-25 (explaining that inquiry under the career offender provisions of the Sentencing Guidelines "*never* involves a factual inquiry into the facts previously presented and tried. Consistent with a pure categorical approach, the method of reviewing the charging document requires that we focus only on the facts necessarily decided by the prior conviction"). Conviction under N.C. Gen. Stat. § 90-95(h)(3), the statute underlying Brandon's 1994 conviction, requires the jury to find only that the defendant sold, manufactured, delivered, transported, or possessed twenty-eight grams or more of cocaine; the jury is not required to determine the precise amount involved. Thus, looking to the presentence report to determine the amount of cocaine actually possessed by Brandon might well exceed the inquiry authorized by the Supreme Court in *Taylor*.

Moreover, while there is no dispute here as to the quantity involved in the 1994 conviction, that may not always be the case. In cases where the underlying conviction is the result of a trial with hotly contested evidence, determination of the quantity involved might well be difficult, if not impossible, without resort to the mini-trials the Supreme Court frowned upon in *Taylor*. *See Taylor*, 495 U.S. at 601 (noting that "the practical difficulties and potential unfairness of a factual approach are daunting"); *United States v. Preston*, 910 F.2d 81, 85 n.3 (3d Cir. 1990) (noting that "a case-by-case, fact-specific approach" when determining whether a prior conviction satisfies the requirements of section 924(e) "could force sentencing courts to hold mini-trials, hear evidence and witnesses and otherwise engage in a detailed examination of the specific facts involved in the prior offenses").

Nonetheless, even if inquiry into the amount actually possessed by Brandon were proper, our conclusion that the 1994 conviction is not a predicate conviction under section 924(e) would not change. The record reveals that Brandon's 1994 conviction involved possession of thirty-five grams, or approximately one and a quarter ounces, of cocaine. If it is proper under section 924(e)(2)(A)(ii) to conclude from

the quantity of drugs actually possessed by the defendant that a prior conviction involves possession with intent to distribute, then the quantity at issue here, a relatively small amount that could reasonably be intended only for personal use, is insufficient to support that conclusion.[4]

The government, however, suggests that we can infer the requisite intent from North Carolina's designation of Brandon's crime as "trafficking." According to the government, trafficking as it is commonly used refers to regular buying and selling. Thus, the government argues that the North Carolina legislature, by defining Brandon's possession offense as trafficking, has decided that anyone who possesses at least twenty-eight grams of cocaine intends to distribute the cocaine. *See State v. Pipkins*, 446 S.E.2d 360, 363 (N.C. 1994) ("Unlike N.C.G.S. § 90-95(a)(3), which combats the perceived evil of individual possession of controlled substances, [the trafficking statute], by its language, is intended to prevent the large-scale distribution of controlled substances to the public."); *State v. Proctor*, 294 S.E.2d 240, 243 (N.C. Ct. App. 1982) ("The purpose behind [the trafficking statute] is to deter trafficking in large amounts of certain controlled substances. Our legislature has determined that certain amounts of controlled substances and certain amounts of mixtures containing controlled substances indicate an intent to distribute on a large scale."). The government therefore contends that a conviction in North Carolina for trafficking by possession necessarily involves possession with intent to distribute.

We believe it is an oversimplification to say that all trafficking offenses in North Carolina involve an intent to distribute. While the

---

[4]Because it cannot be inferred from the quantity possessed by Brandon that the 1994 conviction involved an intent to manufacture or distribute, we do not decide whether the quantity of drugs actually possessed by a defendant can be considered when determining whether a conviction under a statute like the one at issue here, which prohibits possession of certain ranges of drug quantities, is a conviction for a serious drug offense under section 924(e)(2)(A). Of course, if the statutory quantity range were sufficient to support a determination that the conviction involved the requisite intent, then there would be no need to inquire into the actual amount possessed by the defendant.

North Carolina legislature may well have concluded that one who possesses more than twenty-eight grams of cocaine likely intends to distribute it, the statute by its terms applies to those who do not intend to distribute as long as they possess the requisite quantity. In fact, the presence of an intent to distribute can be considered an aggravating factor justifying an increase in the sentence imposed for a trafficking conviction. *See State v. Perry*, 340 S.E.2d 450, 464 (N.C. 1986) ("Intent to sell is not an element of manufacturing, transporting, or possessing 28 grams or more of heroin. The reason a person possesses, manufactures, or transports the heroin is irrelevant. Therefore, the trial judge properly found the aggravating factor that defendant had the specific intent to sell the heroin that he possessed." (citation omitted)); *State v. Winslow*, 389 S.E.2d 436, 441 (N.C. Ct. App. 1990) (holding that the sentences for defendants convicted of trafficking by possession were properly enhanced upon the trial court's determination that they had the specific intent to sell the cocaine). Thus, while North Carolina may have decided that possession of large quantities of drugs is likely to result in distribution of those drugs and that possession of such quantities should be punished as severely as actual distribution, it cannot fairly be said that an intent to distribute is inherent in all violations of N.C. Gen. Stat. § 90-95(h).

Moreover, even if we were to accept the government's contention that the word "trafficking" as it is commonly used and as it is in fact used in the North Carolina statute encompasses an intent to distribute, the government's argument would still fail. In *Taylor*, the Supreme Court was faced with the question of what crimes should be considered burglary under section 924(e)(2)(B)(ii), which defines "violent felony" for purposes of sentencing enhancement to include "burglary, arson, or extortion, or [other crime that] otherwise involves conduct that presents a serious potential risk of physical injury to another." The Court rejected the view that "burglary" as used in section 924 means any crime denominated as burglary under state law. The Court noted that the states define burglary in widely different ways—for example, burglary includes shoplifting in California and theft from a coin-operated vending machine in Texas. *See Taylor*, 495 U.S. at 591. The Court concluded that Congress intended the sentencing enhancements of section 924 to apply to those who have engaged in certain specific conduct, regardless of the label attached to that conduct by state law:

It seems to us to be implausible that Congress intended the meaning of "burglary" for purposes of § 924(e) to depend on the definition adopted by the State of conviction. That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct "burglary."

*Id.* at 590-91.

The Court determined that "'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes." *Id.* at 592. Under *Taylor*, a prior conviction is considered a burglary conviction for purposes of section 924(e) only if the conviction was for a crime "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. If the crime does not have those basic elements, the conviction is not a predicate conviction under section 924(e) even if state law considers the crime to be burglary.

*Taylor* thus requires us to reject the government's argument that Brandon's conviction must have involved possession with intent to distribute simply because the North Carolina legislature has labeled his crime "trafficking." As noted above, states have widely varying definitions of trafficking. To accept the government's argument would mean that defendants with prior convictions for possessing the same quantity of cocaine would or would not be subject to sentencing as armed career criminals depending on the state where the underlying conviction occurred, and thus would create the very inconsistencies in punishment that the Supreme Court in *Taylor* found impermissible. *See Taylor*, 495 U.S. at 588-89 ("Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction.").

### III.

To summarize, we conclude that "intent to manufacture or distribute" need not be an element of the crime underlying a state conviction

for that conviction to be considered a serious drug offense for purposes of sentence enhancement under section 924(e)(2)(A)(ii). Nonetheless, because we cannot say that intent to manufacture or distribute is inherent in the generic conduct prohibited by the statute and alleged in the indictment at issue in this case (possession of between twenty-eight and two hundred grams of cocaine), Brandon's 1994 conviction is not a conviction for a serious drug offense under section 924(e)(2)(A)(ii). And without the 1994 conviction, Brandon's criminal history does not qualify him as an armed career criminal under section 924(e). We therefore vacate Brandon's sentence and remand for resentencing.

*VACATED AND REMANDED*